UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

AHMED MOHD EID JAARA,

            Petitioner,

    v.                                     26-CV-76-LJV
                                             DECISION AND ORDER
JOSEPH FREDEN et al.,[1]

            Respondents.

_____

The pro se petitioner, Ahmed Mohd Eid Jaara, is a native of Kuwait who was admitted to the United States as a lawful permanent resident in December 2004. Docket Item 4-2 ¶ 5; *see also* Docket Item 1 ¶ 2.  In October 2011, Jaara was convicted of conspiracy and sentenced to a term of imprisonment.  Docket Item 4-2 ¶ 6; *see also* Docket Item 4-3 at 2-7.[2]  In light of Jaara's criminal conviction, the Department of Homeland Security, United States Immigration and Customs Enforcement ("ICE"), took him into custody on March 27, 2012, and issued him a notice to appear in immigration court.  Docket Item 4-2 ¶ 7; *see also* Docket Item 4-3 at 12-14.

_____

[1] The petition named three respondents in their official capacities: then-Attorney General Pamela Bondi; then-Secretary of Homeland Security Kristi Noem; and the Deputy Field Office Director and Administrator of the Buffalo Federal Detention Facility, Joseph Freden.  *See* Docket Item 1.  Under Federal Rule of Civil Procedure 25(d), Acting Attorney General Todd Blanche and Secretary of Homeland Security Markwayne Mullin are automatically substituted as respondents for Bondi and Noem.  The Clerk of the Court shall update the case caption accordingly.  For ease of reference, the Court will refer to the respondents as "the government" throughout this decision and order.

[2] Page numbers in docket citations refer to ECF pagination.

In June 2012, Jaara was ordered to be removed to Kuwait, Docket Item 1 ¶ 4, but he was released from custody in the United States about three months later, Docket Item 4-2 ¶ 9.  More than 10 years after that, in April of 2025, he was arrested when he tried to reenter the United States from Canada.  Docket Item 1 ¶ 27.  He has remained in custody ever since and currently is being held at the Buffalo Federal Detention Facility.  *Id.* ¶¶ 3, 27.

Jaara commenced this action earlier this year by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241.  Docket Item 1.  In that petition, he argues that his prolonged detention under 8 U.S.C. § 1231(a) violates the United States Constitution because there is no significant likelihood that he will be removed in the reasonably foreseeable future.  *Id.* at ¶¶ 7, 28-34.  After the government moved to dismiss the petition, Docket Item 4, Jaara responded, Docket Item 8.  Jaara later filed a letter updating the Court on his status.  Docket Items 9 and 10.[3]

For the reasons that follow, Jaara's petition is GRANTED; the government's motion to dismiss, Docket Item 4, is DENIED; and Jaara shall be released immediately.

### BACKGROUND[4]

Jaara is a native of Kuwait who was admitted to the United States as a lawful permanent resident on December 10, 2004.  Docket Item 4-2 ¶ 5; *see also* Docket Item

---

[3] While the Court received two letters that were docketed separately, the letters in fact are the same letter dated May 7, 2026.  *See* Docket Items 9 and 10.

[4] The following facts are taken from the petition, Docket Item 1, as well as records submitted by the government, Docket Item 4-3, the declaration of ICE

¶ 2. On October 14, 2011, Jaara pleaded guilty in the United States District Court for the Eastern District of New York to one count of extortion conspiracy; he was sentenced to imprisonment for 18 months followed by a term of supervised release of three years. Docket Item 4-2 ¶ 6; *see also* Docket Item 4-3 at 2-7 (judgment). Following Jaara's sentence of incarceration, *see* Docket Item 4-3 at 3, ICE took him into custody on March 27, 2012, and issued a notice for him to appear in immigration court, Docket Item 4-2 ¶ 7; Docket Item 4-3 at 12-14 (notice to appear).

On June 26, 2012, an immigration judge ordered Jaara removed to Kuwait. Docket Item 1 ¶ 4; Docket Item 4-2 ¶ 8; *see also* Docket Item 4-3 at 15-16 (removal order). Jaara did not appeal the removal order. Docket Item 1 ¶ 5. But Jaara was not removed; instead, he was released from custody in September 2012 and required to report to immigration officials at least once annually. Docket Item 4-2 ¶ 9; Docket Item 1 ¶ 26.

For more than a decade, Jaara remained on supervision "with no issue[.]" Docket Item 1 ¶ 27; *see* Docket 1-1 at 2-12 (copies of W-2s reflecting Jaara's subsequent work history). But on April 10, 2025,[5] Jaara was driving a 26-foot box truck to make a delivery in Chicago, Illinois, when he inadvertently drove across the border into Canada. Docket Item 1 ¶ 27. When Jaara realized that he no longer was in the

---

Deportation Officer Sean McDonald, Docket Item 4-2, and Jaara's update to the Court, Docket Item 9.

[5] Jaara and the government both state that he has been detained since April 11, 2025, Docket Item 1 ¶ 3; Docket Item 4-2 ¶ 10. That one-day discrepancy is immaterial to the Court's analysis below.

United States, he tried to return and was arrested. *Id.* Jaara has remained in custody ever since. *Id.*

About two weeks after Jaara's arrest, ICE requested a travel document from the Kuwaiti embassy. Docket Item 4-2 ¶ 11. But on May 14, 2025, the Kuwaiti embassy notified ICE that it was not able to provide a travel document. *Id.* ¶ 12.

ICE then tried to remove Jaara to the Palestinian Territories,[6] where he has family and where he lived in the early 1990s. *Id.* ¶¶ 13-14. To accomplish that, ICE first needed to obtain approval for Jaara to travel through Israel. *Id.* ¶ 15. So on September 9, 2025, ICE submitted a transit request to the Israeli government, but at least as of February 13, 2026, that request had not been answered. *Id.*

The government says that it usually takes the Israeli government three to six months to approve or deny such a request, but that it can take longer when the request does not include identification documents issued by the Palestinian Authority. *Id.* ICE does not have such documents for Jaara*, id.* ¶ 16, so ICE is "awaiting information, if any, from the Government of Israel and the Palestinian Authority regarding [Jaara] that would allow his removal to the Palestinian Territories," Docket Item 4-2 ¶ 16.

By letter, Jaara informed the Court that in March 2026, an ICE deportation officer told him that ICE now was trying to deport him to Jordan. Docket Item 9 at 1. In fact, on March 25, 2026, the officer presented Jaara with an application for a Jordanian "'temporary' travel document." *Id.* But Jaara is not "a subject, national, or citizen" of

---

[6] Consistent with the government's filings, the Court also refers to this region as the Palestinian Territories.

Jordan and has "no ties whatsoever" there. *Id*. The deportation officer told Jaara that he would have to "'remove [himself]'" from Jordan to Palestine but also told him that the Jordanian border was currently closed and that "there was no determination as [to] when that would change." *Id.* Then, on May 6, 2026, the officer told Jaara that he was on the list to go to South Africa, that if he refused he would be shackled and put on a charter flight, and that ICE does not need his consent to remove him. *Id.* at 2.

In the meantime, Jaara has remained in ICE custody for well over a year.

## LEGAL PRINCIPLES

### I.    SECTION 2241 PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "When a petitioner brings a habeas petition [under section] 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)). "The equitable principles governing [section] 2241 are reflected in the plenary discretion vested in habeas courts to 'hear and determine the facts, and dispose of the matter as law and justice require.'" *Id.* (some alterations omitted) (quoting *Pinkney v. Keane*, 920 F.2d 1090, 1093 (2d Cir. 1990)).

## II.     MOTION TO DISMISS

A court "reviews a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under [Rule] 12(b)(6)."  *Spiegelmann v. Erfe*, 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018).  "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III.    PRO SE PETITIONS

"When a habeas petitioner proceeds pro se, the court holds the petition to less rigorous standards than it holds filings by counseled parties."  *Nimmons v. Warden*, 2025 WL 2782486, at *2 (E.D.N.Y. Sep. 30, 2025) (quoting *Mejia v. Elmira Corr. Facility*, 702 F. Supp. 3d 83, 93 (E.D.N.Y. 2023)).  Nevertheless, while courts must "liberally construe" a pro se petition "to raise the strongest arguments it suggests," *Mejia*, 702 F. Supp. 3d at 93, "pro se status 'does not exempt a pro se party from compliance with the relevant rules of procedural and substantive law,'" *Nimmons*, 2025 WL 2782486, at *2 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983); *see also*

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a [pro se] litigant must be construed liberally[.]").

## DISCUSSION

Jaara argues that his detention violates both the Fifth Amendment's Due Process Clause and 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See* Docket Item 1 ¶¶ 19-34; *see also id.* at 11. Therefore, he says that he is entitled to immediate release. *Id.* at 10. The government has moved to dismiss Jaara's petition, arguing that despite the length of his detention, Jaara is lawfully detained under section 1231. *See* Docket Item 4-1 at 4-5.

## I.    DETENTION UNDER SECTION 1231

### A. The Statute

Because Jaara is a noncitizen with a final order of removal, his detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 542-45 (2021). "Section 1231 provides that during a specified ninety-day removal period, 'the Attorney General shall detain the [noncitizen].'" *Diallo v. Joyce*, 817 F. Supp. 3d 202, 204 (S.D.N.Y. 2025) (quoting 8 U.S.C. § 1231(a)(1)(A), (a)(2)(A)); *see also Guzman Chavez*, 594 U.S. at 528 ("During the removal period, detention is mandatory."). Under section 1231's explicit terms, that period begins "on the latest" of three possible dates:

(i)    The date the order of removal becomes administratively final.

(ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.

> (iii)     If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B); *see also Hechavarria v. Sessions*, 891 F.3d 49, 54-55 (2d Cir. 2018), *as amended* (May 22, 2018).

"If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3).  In "normal circumstances, after the ninety-day removal period ends, a person is required to be released from detention under supervision."  *Diallo*, 817 F. Supp. 3d at 204.  Under the relevant federal regulations, "that person would be released with an order of supervision, with regulations specifying conditions under which they can be re-detained."  *Id.* (citing 8 C.F.R. § 241.4).

But the government is not required to release all noncitizens after the removal period ends.  More specifically, "[a]fter the 90-day removal period expires, section 1231(a)(6) authorizes the detention of three classes of persons 'beyond the removal period': noncitizens who are (1) inadmissible, (2) removable as the result of violations of certain status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy, or (3) determined by the Attorney General to be a risk to the community, or to be unlikely to comply with the order of removal."  *Zhu v. Genalo*, 798 F. Supp. 3d 400, 407 (S.D.N.Y. 2025) (quoting 8 U.S.C. § 1231(a)(6)).

As is immediately clear, that statute "fails to specify *how long* the Attorney General can continue detention beyond the removal period."  *Lin v. United States*, 2007

WL 951618, at *2 (S.D. Tex. Mar. 28, 2007); *see also Qasemi v. Kurzdorfer*, 2025 WL 2938607, at *3 (W.D.N.Y. Oct. 16, 2025) ("By its plain language, [section 1231(a)(6)] does not appear to impose any limitation on the length of a[ noncitizen]'s detention."). And because a "statute permitting indefinite detention of a[ noncitizen] would raise a serious constitutional problem," *Zadvydas*, 533 U.S. at 690, the Supreme Court has provided guidance for courts addressing cases that involve detention under section 1231(a)(6).  The Court turns now to that guidance.

### B.  *Zadvydas v. Davis*

In *Zadvydas,* "the Supreme Court interpreted [section] 1231(a)(6) narrowly to avoid the possible constitutional problems with indefinite detention."  *Qasemi*, 2025 WL 2938607, at *3.  More specifically, the Court held that section 1231(a)(6), "read in light of the Constitution's demands, limits a[ noncitizen]'s post-removal-period detention to a period reasonably necessary to bring about that [noncitizen]'s removal from the United States."  *Zadvydas*, 533 U.S. at 689; *see also Lema v. Rhoney*, 2026 WL 380402, at *2 (W.D.N.Y. Feb. 11, 2026) (Wolford, C.J.) ("In *Zadvydas*, the Supreme Court read an implicit limitation into [section] 1231(a)(6)." (citation and internal quotation marks omitted)).  "This limitation is linked to the statute's 'basic purpose,' which is to 'assure the [noncitizen]'s presence at the moment of removal.'"  *Qasemi*, 2025 WL 2938607, at *3 (quoting *Zadvydas*, 533 U.S. at 699 (alteration omitted)).

"The *Zadvydas* court also provided a framework under which habeas courts are to review claims challenging continued detention under [section] 1231(a)(6)."  *Id.*  In doing so, "[t]he *Zadvydas* Court . . . adopted a 6-month 'presumptively reasonable

9

period of detention,' and instructed that 'after this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing.'" *Lema*, 2026 WL 380402, at *2 (quoting *Zadvydas*, 533 U.S. at 701) (alteration omitted)).

"In analyzing the likelihood of removal, courts consider a variety of factors, including the existence of a repatriation agreement with the target country, the target country's prior record of accepting removed [noncitizens], and specific assurances from the target country regarding its willingness to accept a[ noncitizen]." *Hassoun v. Sessions*, 2019 WL 78984, at *4 (W.D.N.Y. Jan. 2, 2019). And when conducting that analysis, courts "must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive . . . efforts to enforce this complex statute, and [of] the Nation's need to speak with one voice in immigration matters." *Zadvydas*, 533 U.S. at 700 (citation and internal quotation marks omitted).

"The mere passage of time beyond the six-month presumptively reasonable period does not satisfy [the petitioner's] burden under *Zadvydas*." *Lorenzo v. Barr*, 2021 WL 84283, at *6 (W.D.N.Y. Jan. 11, 2021). But at the same time, as the length of detention grows, "what counts as the 'reasonably foreseeable future' conversely" shrinks. *Zadvydas*, 533 U.S. at 701. "In effect, the parties' respective burdens shift as the length of detention increases." *Hassoun*, 2019 WL 78984, at *4. "Thus, as time passes, the mere existence of possible avenues for removal becomes insufficient to justify further detention; some evidence of progress is required." *Id.* (collecting cases).

10

## II.    APPLYING *ZADVYDAS*

With those principles in mind, the Court now turns to the facts of Jaara's

detention and the government's efforts to remove him.  Because Jaara now has been

detained for more than twice six months,[7] *see* Docket Item 1 ¶¶ 3, 27, he most certainly

"has surmounted the first of *Zadvydas*'s hurdles," *Hassoun*, 2019 WL 78984, at *4, and

then some.  The question thus becomes whether he has provided "good reason to

believe that there is no significant likelihood of removal in the reasonably foreseeable

future." *Zadvydas*, 533 U.S. at 701.  And he has.

Jaara says that the "persistent inability" of the Department of Homeland Security

("DHS") "to effectuate [his] removal provides threshold evidence that there is not a

significant likelihood of removal in the foreseeable future."  Docket Item 1 ¶ 28.  He

---

[7] Jaara does not claim to have sought judicial review of the removal order or obtained a stay, and he is detained under an immigration process; therefore, only the first criterion of section 1231(a)(1)(B)—when the removal order became administratively final—marks the beginning of his removal period.  *See* 8 U.S.C. § 1231(a)(1)(B)(i)-(iii).  Because Jaara did not appeal his removal order to the Board of Immigration Appeals, that removal order became administratively final on June 26, 2012, the date it was issued.  *See, e.g., Villa as Next Friend of Villa v. Warden, Broome Cnty. Corr. Facility*, 2026 WL 925828, at *3 (N.D.N.Y. Apr. 6, 2026) (because the petitioner waived appeal of the removal order, the order of removal became "administratively final" under section 1231(a)(1)(B)(i) on the date it was issued).  His detention was mandatory for the ninety-day period following June 26, 2012.  8 U.S.C. § 1231(a)(2)(A).  And Jaara was released from custody on September 19, 2012, just before the ninety-day mandatory detention period expired.  Docket Item 4-2 ¶ 9.  But determining the exact beginning and ending of Jaara's removal period is not material to the Court's analysis because it is undisputed that Jaara's current detention has exceeded six months: indeed, Jaara was re-detained in early April of 2025, *id.* ¶ 10; he had been detained more than eight months when he filed this petition; and he now has been detained well over a year.

argues that continuing to detain him when there is no significant likelihood of his removal in the reasonably foreseeable future deprives him of his "strong interest in liberty" and imposes "actual and substantial hardships and irreparable injuries." *Id.* ¶ 33 (internal quotation marks omitted). And he asks this Court to order his release in light of his strong family ties in the United States, the fact that he is not a danger to the community or a flight risk, and the availability of supervision programs that would cost significantly less than his detention while still ensuring his appearance. *See id.* ¶¶ 30, 35-38; *see also* Docket 1-2 at 2-21 (letters of support submitted by Jaara).

As noted above, merely noting "that the government has been unable to obtain a travel document to date" or relying on the length of time in detention does not satisfy a petitioner's burden under *Zadvydas*. *See Callender v. Shanahan*, 281 F. Supp. 3d 428, 434-35 (S.D.N.Y. 2017); *Lorenzo*, 2021 WL 84283, at \*6. But Jaara has done far more than that, particularly in light of the government's several failed efforts to deport him since he was detained in April 2025.

First, the government tried to deport Jaara to Kuwait—as his removal order provided—but the government was unable to obtain the necessary travel documents. Docket Item 4-2 ¶¶ 8, 11-12. So ICE tried to remove him to the Palestinian Territories*, id.* ¶ 13, but that required permission from Israel, *id.* ¶ 15. And while the government requested such permission 10 months ago, *id.*, it has yet to be granted. What is more, the government concedes that it still "is awaiting information, *if any*, from the Government of Israel and the Palestinian Authority regarding [Jaara] that would allow his removal to the Palestinian Territories." *Id.* ¶ 16 (emphasis added). In other words, the government apparently does not know whether it will ever get an answer.

Since February 13, 2026, the date that the government moved to dismiss the petition, more than four months have passed with no apparent progress. And to date, the government has not provided an update on the status of its request to Israel or any attempt to secure the identification documents necessary for Jaara's removal to the Palestinian Territories.

Jaara has since been told that he is destined for Jordan or South Africa. Docket Item 9 at 1-2. But there is no evidence that the government is anywhere near effecting his removal to either of those places—or anywhere else in the world, for that matter. And because the government has not given this Court any reason to believe that the government has obtained any of the materials necessary for Jaara's removal—such as a scheduled removal, a travel document, or an identity document issued by the Palestinian Authority or Israel—the Court is "left to guess whether [Jaara's] deportation might occur in ten days, ten months, or ten years." *See Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

Under these circumstances, the Court finds that Jaara has cleared the low bar needed to shift the burden back to the government. *See Yuan v. Anda-Ybarra*, 2026 WL 837021, at *1-2 (D.N.M. Mar. 26, 2026) (petitioner had "met his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future" when the government had not submitted "proof of a travel document, . . . proof of acceptance by China, [or] proof of a scheduled removal" (internal quotation marks omitted)); *see also Sahin v. Casey*, 2026 WL 800558, at *2 (S.D. Cal. Mar. 23, 2026) ("The 'good reason to believe' standard is not a very high bar." (quoting *Freeman v.*

13

*Watkins*, 2009 WL 10714999, at *3 (S.D. Tex. Dec. 22, 2009))).   But the government has pointed to little to rebut Jaara's showing.

In fact, the government has given this Court nothing other than the transit request that has been pending with Israel for more than five months.  Docket Item 4-1 at 3; Docket Item 4-2 ¶ 16.  The government has not provided evidence that ICE has successfully removed others to the Palestinian Territories; or updated its progress on removing Jaara to the Palestinian Territories or Kuwait or Jordan or South Africa; or given this Court any reason to believe that Jaara's removal will ever happen.  And for that reason, the government has not come close to rebutting Jaara's showing.  *Cf. Salem v. Core Civic Warden*, 2026 WL 194156, at *3 (N.D. Ohio Jan. 26, 2026) (denying habeas petition where "[r]espondents have submitted unrebutted evidence that ICE has successfully removed individuals to the Palestinian [T]erritories."); *Hammouda v. Dep't of Homeland Sec.*, 2026 WL 91465, at *2, *5-6 (N.D. Ohio Jan. 13, 2026) (denying habeas relief where respondents declared that the petitioner was slated for one of two specifically scheduled missions to the Palestinian Territories and the government was "nearing final approval" of travel documents and "pledged that [p]etitioner's removal [wa]s likely to occur within days").

Nor has the government suggested that it "anticipate[s] receiving special transit permission necessary to enter the occupied Palestinian [T]erritories[,]" *see Hammouda*, 2026 WL 91465, at *5, let alone that it has made progress toward Jaara's removal by actually receiving that permission, *cf. Zakarneh v. United States Immigr. & Customs Enf't*, 2026 WL 73825, at *4 (W.D. Wash. Jan. 9, 2026) (denying relief under *Zadvydas* based on evidence that "the government of Israel has approved [p]etitioner's removal

through Israel to the West Bank so long as a flight can be arranged" and at least two removal flights had been arranged for petitioner (citation and internal quotation marks omitted)).  Indeed, as Jaara argues in his response, ICE is apparently waiting for *any* information from Israel or the Palestinian Authority about Jaara—which implies that ICE "ha[s] acknowledged the possibility of receiving no information at all" and that such information may not even exist.  *See* Docket Item 8 at 2.

In light of the lack of progress since Jaara's arrest more than a year ago, the government's proffered evidence and explanation concerning its efforts to remove Jaara to the Palestinian Territories falls far short.  *See Fadwa v. Lyons*, 2025 WL 3525026, at *5-6 (D. Colo. Dec. 9, 2025) (granting habeas relief where petitioner had been detained for almost four months after presumptively reasonable timeframe ended, ICE's application for transit documents from Israel had been pending for 195 days, and ICE did not provide any details about how removal plan would be effected or whether Palestinian Authority would accept petitioner); *Shamma v. Raycraft*, 2026 WL 598451, at *3 (W.D. Mich. Mar. 4, 2026) (granting petition where government repeatedly was unable to acquire travel documents for petitioner and provided only a "general, speculative statement" that "Israel will take stateless subjects and transfer [them] to Palestine via the West Bank" to show significant likelihood of removal in the reasonably foreseeable future (citation and internal quotation marks omitted)); *Barghouthi v. Field Off. Dir.*, 2026 WL 1040943, at *5 (S.D. Fla. Apr. 17, 2026) (ordering bond hearing where DHS was unable to effect removal for years, circumstances remained "materially unchanged from those that previously rendered [p]etitioner's removal impracticable," and government presented only a "speculative" attempt "to pursue removal through

Palestinian-issued travel documents"); *Thabata v. Blanche*, 2026 WL 1495209, at *2 (W.D. Okla. May 28, 2026) ("Over four years later, [p]etitioner still lacks a passport to enter Palestine, [r]espondents have not obtained any travel documents for [p]etitioner, and Isr[ae]l has not approved his removal though the request was submitted . . . almost six months ago.  Such prolonged silence reinforces that removal is not significantly likely in the reasonably foreseeable future."); *Al Ellary v. Bondi*, 2026 WL 787663, at *1 (M.D. Fla. Mar. 20, 2026) (granting petition of Palestinian native where multiple countries declined to accept him and ICE had not identified any other country that might accept him or provided any plan or timeline for removal).

Finally, the government has not attempted to rebut Jaara's initial showing by providing evidence that it is trying to remove him to some other country such as Jordan or South Africa.  Indeed, aside from Jaara's letter dated May 7, 2026, Docket Items 9 and 10, the Court has no reason to believe that the government has even explored those avenues.  So to the extent that the government may be trying to remove Jaara somewhere else, the Court has not received any information—let alone a declaration or official documentation—from the government itself.  And at this stage, it is the government's burden to present "evidence sufficient to rebut [Jaara's] showing."  *See* *Lema*, 2026 WL 380402, at *2 (declaration from ICE deportation officer that "cryptically state[d]" that DHS is "actively working . . . to remove [p]etitioner to a third country" with no further details was "inadequate to rebut [petitioner's] showing under *Zadvydas*" (citation and internal quotation marks omitted)).

In sum, Jaara has demonstrated that he is entitled to relief under *Zadvydas* because he has been detained for more than twice six months and there still is no

16

significant likelihood of his removal in the reasonably foreseeable future. For that reason, he is entitled to immediate release.[8]  *See Trejo v. Warden of ERO El Paso East Montana,* 807 F. Supp. 3d 697, 712 (W.D. Tex. 2025) ("The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision."); *see also Diallo,* 817 F. Supp. 3d at 210 ("[T]he 'typical remedy' for 'unlawful executive detention is, of course, release.'" (quoting *Munaf v. Geren,* 553 U.S. 674, 693 (2008) (alteration omitted)); *Lema,* 2026 WL 380402, at *2 (ordering immediate release of petitioner who brought successful *Zadvydas* claim). The government's motion to dismiss therefore is denied,[9] and Jaara's petition is granted.

---

[8] Because Jaara is entitled to his release under *Zadvydas*, the Court need not address the other arguments raised in his petition.

[9] In the motion to dismiss, the government also says that this Court "lacks jurisdiction over this matter [under] 8 U.S.C. § 1252," Docket Item 4-1 at 5, but it does not expand on this argument. The Court assumes that the government is arguing that its review of Jaara's petition is barred by 8 U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to . . . execute removal orders." Such an argument misses the point of Jaara's petition, which challenges his detention—not his removal order. *See* Docket Item 1 ¶¶ 31-34. And "[d]istrict courts retain jurisdiction to hear habeas petitions from noncitizens challenging their detention during or following immigration proceedings." *Al Nassar v. Rhoney*, 2026 WL 1800891, at *3 (W.D.N.Y. June 23, 2026) (citing *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011)). This Court therefore "has little difficulty in concluding that it may exercise jurisdiction over [Jaara]'s habeas claims," which argue that his detention violates the Constitution and federal law. *See id.* at *3 (concluding that court had jurisdiction to hear habeas claims raised by petitioner who argued, among other things, that his detention was indefinite and violated "the Constitution and 8 U.S.C. § 1231(a)(6)").

## **CONCLUSION**

For the reasons stated above, Jaara's petition, Docket Item 1, is GRANTED, and the government's motion to dismiss, Docket Item 4, is DENIED.  **Within 24 hours** of the issuance of this order, Jaara shall be released from custody.  The respondents may, in their discretion, impose conditions of release.  On or before **June 29, 2026**, the government shall file an affidavit attesting to Jaara's release.


SO ORDERED.

Dated:        June 26, 2026
              Buffalo, New York


                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE